IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CAROLINE MORE,

                    Plaintiff,

        v.

BISHOP WILLIAM P. CALLAHAN,
ARCHBISHOP JEROME E. LISTECKI,
MONSIGNOR MICHAEL J. GORMAN,
EDWARD JONES and WILLIAM MOORE,

                    Defendants.

OPINION AND ORDER

12-cv-905-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CAROLINE MORE,

                    Plaintiff,

        v.

ST. JOSEPH THE WORKMAN
CATHEDRAL PARISH, LA CROSSE,
WI, CITY OF LA CROSSE, WI and
OFFICER CRAIG TEFF,

                    Defendants.

OPINION AND ORDER

13-cv-846-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Caroline More brought these two civil cases in which she seeks monetary relief for injuries related to sexual assault, libel and slander. Plaintiff asserts diversity jurisdiction, alleging in 12-cv-905 that this court has jurisdiction to hear the case because she

1

was a resident of Minnesota at the time of filing and all of the defendants, with the exception of defendants Edward Jones and William Moore, had offices and residences in Wisconsin. (She alleges that Jones had his office in Wisconsin and that Moore resided in La Crosse and worked there as well.) In 13-cv-846 she alleges that at the time of filing, she was a citizen of Minnesota and defendants St. Joseph the Workman Cathedral Parish and City of La Crosse were both located in and incorporated in Wisconsin. She does not allege anything about defendant Craig Teff's residence, but says only that he was a member of the La Crosse Police Department.

Defendants in case no. 13-cv-846 moved to dismiss that case, contending that diversity jurisdiction is not present because plaintiff has not shown that she is a citizen of a state other than Wisconsin. Defendants in case no. 12-cv-905 did not join the motion to dismiss or file their own motion, but they were invited to participate in the evidentiary hearing held on the issue because its resolution in the 2013 case might affect the court's jurisdiction in the 2012 case.

After hearing the evidence at the hearing and reviewing the record, I conclude that plaintiff was domiciled in Minnesota when she filed lawsuit 12-cv-905, but that she was domiciled in Wisconsin when she filed 13-cv-846. The defendants in 12-cv-905 are all domiciled in Wisconsin; therefore, diversity exists and this suit can remain in federal court. The 2013 suit will be dismissed for lack of jurisdiction because plaintiff's domicile in Wisconsin in 2013 means that there is no diversity of citizenship between her and the defendants, all of whom appear to be citizens of Wisconsin.

FACTS

Since October 2010, plaintiff Caroline Moore has lived in a number of different places, primarily in the states of Wisconsin and Minnesota. She has no permanent residence, but generally lives with friends, in apartments, residences or, in one case a guest house owned by friends. At times, she has lived at the Salvation Army women's shelter in La Crosse, Wisconsin, or in her automobile.

Plaintiff lived in Caledonia, Minnesota from December 2010 until November 2012, when she left the area after a dispute with her landlady. In November, she spent two weeks in Glenview, Illinois, and then came to Madison, Wisconsin, where her brother lives and where she did legal research on this case. While staying in Madison, she filed her complaint in 12-cv-905.

Plaintiff moved to La Crosse in the early part of 2013, then lived in the state of Iowa in March and April. It is not clear where she was living between April and October 2013. Although she spent some time in October 2013 at a friend's guesthouse in Mabel, Minnesota, the record shows that she must have spent the major part of 2013 in Wisconsin. On September 6, she was charged criminally in Iowa County, Wisconsin; on November 1, she was named a respondent in an Iowa County case. In each of the charges, her address was shown as being in New Glarus, Wisconsin (Green County). She was hospitalized in March 2013 and October 2013 at Upland Hills in Dodgeville, Wisconsin (Iowa County). Also in March, she visited the Mayo Health Clinic in Rochester, Minnesota, and gave her Minnesota post office box as her address. She testified to having lived in New Glarus in November

3

2013 while her car was being repaired; in the same month she had medical treatment in La Crosse.  As of December 1, 2013, she was back in New Glarus and on December 9, 2013, she filed case 13-cv-846.  During some of the time she was in Wisconsin in 2013, she was living in her car.

Plaintiff has a Minnesota driver's license, obtained on February 2, 2012, that is not due to expire until June 2016; she registered a vehicle in Minnesota in November 2012; she is registered to vote there and did vote as recently as 2012.  She filed taxes in Minnesota in 2011.  Since 2008, she has had a bank account in Wisconsin, at the Mound City Bank, into which her Social Security benefits are deposited, and she owns property in Crawford County, Wisconsin.  Her address on the property record is given as La Crescent, Minnesota, but she has not lived in Minnesota since November 2012, with the exception of the time she spent in her friend's guesthouse in October 2013.  She applied for a post office box in La Crescent in January 2013.

Plaintiff was registered to vote in Wisconsin in September 2010 and voted in the state three times in 2008, once in 2009 and twice in 2010.  In 2014, she was charged criminally in Lafayette County, Wisconsin on April 14 and she gave her address as New Glarus; between April 14 and April 17, 2014, she was ticketed five times for driving offenses; and gave one of three different addresses on each occasion: New Glarus, Wisconsin, La Crescent, Minnesota and Caledonia, Minnesota.

Plaintiff last worked for wages in 2011, when she was a hostess in a restaurant in La Crosse.  Earlier, in 2008, she worked at a bakery in Mount Horeb, Wisconsin, for about six

4

months.  Often, she does freelance writing for a newspaper group run out of Black Earth, Wisconsin, and she has done some radio work.  In 2012, she performed some contract work for a congressional campaign in Minnesota.  She hopes to be involved in a project to film barn restorations with a person from Minnesota, but most of the project meetings have been held in Wisconsin.

OPINION

As a general rule, in determining the citizenship of individuals, courts look to where the parties are domiciled, that is, where they have their permanent, fixed homes to which they have the intention of returning whenever they are absent therefrom. 15 Coquillette et al., Moore's Federal Practice 3d § 102.34[1], 3d ed. 2014.  The inquiry becomes more difficult in cases such as this in which plaintiff has no fixed residence, but stays with friends or relatives or at shelters and even, in some instances, in her car.  But this obstacle could be overcome if plaintiff could show that she had the intent to return to Minnesota after she left in 2012.

To determine domicile or where an individual intends to make her home, courts look for objective manifestations of intent such as where the individual is employed and registered to vote; where she exercises civil and political rights; where she pays taxes and receives mail; the location of her bank accounts, personal property and any land she owns; and whether the individual belongs to any clubs or organizations in a particular state.  O'Neal v. Atwal, 425 F. Supp. 2d 944, 947 (W.D. Wis. 2006) (citing 15 Moore's Federal Practice §

5

102.36[1] (3d ed. 2005)).  At both the evidentiary hearing and at her deposition, plaintiff testified that she did have such intent, but she failed to back it up with evidence.  Sadat v. Mertes, 615 F.2d 1176, 1181 (7th Cir. 1980) (quoting Berhalter v. Irmisch, 75 F.R.D. 539, 541 (W.D.N.Y. 1977)).

Simply saying that one intends to move back to another state is of limited evidentiary value unless it is supported by facts. "'[S]tatements of intent are entitled to little weight when in conflict with the facts,'" id. (quoting Garner v. Pearson, 374 F. Supp. 580, 589 (M.D. Fla. 1973).  Although plaintiff retains a Minnesota driver's license and has vehicles registered there, paid taxes in Minnesota in 2011 and has a Minnesota post office box, the evidence shows that she has lived in Wisconsin full time since she left Caledonia in November 2012, with two exceptions:  when she was living in Iowa in the spring of 2013 and when she had medical treatment at the Mayo Clinic in Rochester, Minnesota, in March 2013.  She filed both lawsuits while physically present in Wisconsin.  In December 2012, when she filed her first lawsuit, she was staying temporarily with her brother; when she filed her second lawsuit in December 2013, she was living in New Glarus.  Police and medical records show that she continued to live in Wisconsin in 2014, throwing into doubt her assertion that it was her intent to go back to Minnesota.  She may want to live there eventually, but her actions since she left in 2012 do not support a finding that she intended her stay in Wisconsin to be a temporary one.

Plaintiff left Minnesota after a fight with her landlady.  It is highly questionable whether she could have returned to that residence; even if she could have, she has not shown

6

any reason to think that she planned to return to Minnesota as a resident. She did spend time there almost eleven months later, in October 2013, but her stay at the guesthouse was a brief one and she has made no showing that the guesthouse could be considered her residence.

The facts show that in December 2013, when plaintiff filed case 13-cv-846, her domicile was no longer in Minnesota. She was living, collecting her social security benefits and hospitalized in Wisconsin. Her contacts with the police were there, and the addresses she gave in connection with those contacts were in Wisconsin. Therefore, I conclude that this court cannot hear the case for lack of diversity between plaintiff and defendants.

Case 12-cv-905 may go forward. Minnesota was plaintiff's domicile throughout 2012. It was the place where she worked, where she paid her 2011 taxes and where she had obtained her driver's license and titled her vehicles. Although plaintiff left the state before she filed case 12-cv-905, I cannot say that she had changed her intent to return to Minnesota in this three week period. "'Intent is a state of mind which must be evaluated through the circumstantial evidence of a person's manifested conduct.'" Sadat, 615 F.2d at 1181. See also Mitchell v. United States, 88 U.S. 350, 353 (1874) ("A domicile once acquired is presumed to continue until it is shown to have been changed. Where a change of domicile is alleged the burden of proving it rests upon the person making the allegation."); Galva Foundry Co. v. Heiden, 924 F.2d 729, 730 (7th Cir. 1991) (district court's conclusion that defendant's part-time residence in Florida did not effect change in domicile from Illinois was not clearly erroneous).

7

However, it is fair to conclude from the evidence that her intent had changed by December 2013, when she filed 13-cv-846.  By that time, plaintiff's only connection with the state of Minnesota was a post office box; she had spent the greater part of the year in southern Wisconsin.  Her actions and her contacts outweigh her testimony about her plans to move back to Minnesota in the future.  A desire to move to some other state "sometime," does not amount to intent to return to one's residence for the purpose of determining diversity.  Until it is supported by actions, it is more analogous to a future inclination "to move to Arizona upon retirement."

ORDER

IT IS ORDERED that the motion filed by defendants St. Joseph the Workman Cathedral Parish, La Crosse Police Department and Officer Craig Teff to dismiss the case against them for lack of diversity jurisdiction is GRANTED.

Entered this 9th day of January, 2015.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

8