IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CAROLINE MORE,

                 Plaintiff,

      v.

BISHOP WILLIAM P. CALLAHAN, O.F.M.,
ARCHBISHOP JEROME E. LISTECKI,
MONSIGNOR MICHAEL J. GORMAN,
EDWARD JONES and WILLIAM MOORE,

                 Defendants.

OPINION AND ORDER

12-cv-905-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This is a civil diversity action for monetary relief in which plaintiff Caroline More, who is proceeding pro se, is suing defendants for injuries related to sexual assault, libel and slander. She alleges that defendant William Moore, a janitor at St. Joseph the Workman Parish, sexually assaulted her when she was visiting the church on December 8, 2010, and that defendant Edward Jones, the administrative assistant for the parish, defamed her by making a false statement to the police. Plaintiff further contends that defendants Bishop William Callahan, Archbishop Jerome Listecki and Monsignor Michael Gorman are vicariously liable for the acts of Moore and Jones. Before the court are the motions for summary judgment filed by defendant Listecki, dkt. #77, and defendants Callahan, Gorman and Jones, dkt. #85, in which they argue that their actions do not give rise to liability. Although plaintiff filed a four-page document entitled "Plaintiff's Response to Summary

1

Judgment," dkt. #94, in which she discussed her domicile, she did not respond to defendants' arguments concerning the merits of her claims.

Defendants' motions for summary judgment will be granted.  Plaintiff has failed to raise a genuine issue of material fact with respect to her defamation claim against defendant Jones or her claims that defendants Callahan, Gorman and Listecki are vicariously liable for the actions of defendant Moore.  This case will proceed to trial on the one remaining claim that defendant Moore sexually assaulted plaintiff.

Before discussing the merits of the motions, I will take up plaintiff's failure to follow this court's summary judgment procedures and the consequences of that failure.  In the preliminary pretrial conference order entered on June 4, 2013, the parties were given specific instructions about how to file and respond to summary judgment motions.  Dkt. #20. Besides pointing out important procedures, the order warned the parties of the consequences of the failure to follow the procedures, stating in part that

> The only way to make sure that the court will consider your documents is to start early, do them right the first time, and file them and serve them on time. If you do not do things the way it says in Rule 56 and in the court's written summary judgment procedure, then the court will not consider your documents.

Id. at 5.  Attached to the order is the court's Memorandum to Pro Se Litigants Regarding Summary Judgment Motions and Procedure to Be Followed on Motions for Summary Judgment, which address issues such as the requirements to file proposed facts and how to put into dispute the other party's proposed facts.  Id. at 12-18.  The court's summary judgment procedures are like the written rules of a game that insure that everyone is playing

2

by the same rules.  They also help the court review and address motions by keeping information organized and concise.

Plaintiff did not file a response to defendant's proposed findings of fact or propose any findings of fact of her own.  The court's memorandum advises pro se parties that

> If a party fails to respond to a fact proposed by the opposing party, the court will accept the opposing party's proposed fact as undisputed. If a party's response to any proposed fact does not comply with the court's procedures or cites evidence that is not admissible, the court will take the opposing party's factual statement as true and undisputed.

Id. at 13.  See also Proc. on Mot. for Summ. Jmt., § II, dkt. #20 at 16 ("Unless the responding party puts into dispute a fact proposed by the moving party, the court will conclude that the fact is undisputed."); Wackett v. City of Beaver Dam, Wisconsin, 642 F.3d 578, 583 (7th Cir. 2011) (upholding similar rule).  For that reason, I will adopt defendants' proposed findings of fact as undisputed.

## UNDISPUTED FACTS

### A.  Background

Defendant Archbishop Jerome Listecki became the Metropolitan Archbishop of the Ecclesiastical Province of Milwaukee on January 4, 2010.  The Archdiocese of Milwaukee is a non-stock corporation and is a completely separate and independent corporation from the other dioceses within the State of Wisconsin, including the Diocese of La Crosse.

Defendant Bishop William Patrick Callahan became the bishop of the Diocese of La Crosse on August 11, 2010, and in that role serves as the corporate president of the parishes

3

within the Diocese of La Crosse, including St. Joseph the Workman Cathedral Parish in La Crosse, Wisconsin. St. Joseph the Workman Cathedral Parish was individually incorporated on or about October 23, 2006, pursuant to Wis. Stat. § 187.19 and has remained individually incorporated since that time.

Defendant Callahan appointed defendant Monsignor Michael J. Gorman as Vicar General and Moderator of the Curia for the Diocese of La Crosse on July 1, 2011. From August 12, 2003 to July 1, 2011, defendant Gorman was the rector of St. Joseph the Workman Cathedral Parish and served as the corporate vice president of the parish pursuant to § 187.19.

Defendant Edward Jones has served as the administrative assistant of the St. Joseph the Workman Cathedral Parish since September 12, 2005. At no time has he been an officer or a director for the parish.

## B. The Relationship Between Defendants

Under canon law of the Catholic Church, Archbishop Listecki has only certain limited authority and responsibility; he does not have any responsibility for or involvement in hiring or supervising lay (or non-religious) employees of the parishes or dioceses. Specifically, neither defendant Listecki nor the Archdiocese of Milwaukee had any responsibility or role in hiring, training or supervising defendant William Moore as a janitorial employee at St. Joseph the Workman Parish in La Crosse, Wisconsin. They also did not control any aspect of the work performed by defendant Moore or provide him with direction or tools to

4

perform his work.  Similarly, during his earlier tenure as bishop of the La Crosse diocese, defendant Listecki did not make personnel decisions concerning the non-spiritual positions within the parishes, including St. Joseph the Workman Parish; did not hire, train or supervise defendant Moore; and did not control any details of the work performed by defendant Moore.

Defendants Callahan, Gorman and Jones are not defendant Moore's employers, and none of them have any knowledge of Moore engaging in any tortious conduct with plaintiff. Defendants Callahan, Gorman and Jones did not direct, participate in or cooperate with any tortious act that defendant Moore may have committed against plaintiff.

## C.  Defendant Jones's Statements to Police

At some point before February 2011, a parishioner spoke with defendant Jones about plaintiff and described an incident in which the parishioner and plaintiff were present together at the Shrine of Our Lady of Guadalupe in the La Crosse, Wisconsin area.  The parishioner told defendant Jones that at some point during their visit to the shrine, plaintiff disrobed and was topless.  On or about February 17, 2011, an officer from the La Crosse Police Department came to meet with defendant Jones concerning plaintiff's complaint that she was assaulted while at the Cathedral.  During the questioning, defendant Jones told the officer about what the parishioner had told him, but he never claimed to have any personal knowledge about the incident.

5

OPINION

## A.  Standard of Review

Under Fed. R. Civ. P. 56, summary judgment is appropriate "when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Goldstein v. Fidelity & Guaranty Insurance Underwriters, Inc., 86 F.3d 749, 750 (7th Cir. 1996) (citing Fed. R. Civ. P. 56); see also Celotex v. Catrett, 477 U.S. 317, 323 (1986). All reasonable inferences from undisputed facts should be drawn in favor of the nonmoving party.  Baron v. City of Highland Park, 195 F.3d 333, 338 (7th Cir. 1999); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  However, the nonmoving party cannot simply rest upon the pleadings once the moving party has made a properly supported motion for summary judgment; instead, the nonmoving party must "set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  The Court of Appeals for the Seventh Circuit has cautioned that summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events."  Schacht v. Wisconsin Department of Corrections, 175 F.3d 497, 504 (7th Cir. 1999).

## B.  Defamation

Under Wisconsin law, the elements of defamation include a false statement to a person other than the person defamed that is unprivileged and tends to harm one's reputation so as to lower him or her in the estimation of the community or to deter third

persons from associating or dealing with him or her.  In re Storms v. Action Wisconsin Inc.,
2008 WI 56, ¶ 37, 309 Wis. 2d 704, 750 N.W.2d 739.  Statements made to law
enforcement officers "fall within the ambit of conditionally privileged statements, provided,
however, that the damaging remarks are made in good faith without malice."  Bergman v.
Hupy, 64 Wis. 2d 747, 751, 221 N.W.2d 898 (1974) (quoting Lisowski v. Chenenoff, 37
Wis. 2d 610, 627, 628, 155 N.W.2d 619, 628 (1968)).

In her complaint, plaintiff alleges that defendant Jones made a false statement to the
police about her being topless at a local shrine and suggested that he may have been speaking
on behalf of other church administrators.  Plt.'s Cpt., dkt. #2, at ¶¶ 18 and 22.  Defendant
Jones avers that he was merely relaying to the police what he had heard from another
parishioner and made clear that he had no personal knowledge of the event.  Plaintiff has
failed to present any evidence to support her claim or refute defendant Jones's version of the
events.  Further, even if the incident at the shrine did not happen, there is no evidence that
defendant Jones acted in bad faith or with malice when speaking to the police, which makes
his statement conditionally privileged under Wisconsin law.  As a result, defendant Jones is
entitled to summary judgment and defendants Callahan, Gorman and Listecki may not be
held liable for his actions.


## C.  Vicarious Liability for Defendant Moore's Tort

Although a person is generally liable only for his or her own torts, the law will apply
vicarious liability under certain circumstances.  Kerl v. Dennis Rasmussen, Inc., 2004 WI

86, ¶ 17, 273 Wis. 2d 106, 682 N.W.2d 328; <u>Lewis v. Physicians Insurance Company of Wisconsin</u>, 2001 WI 60, ¶ 11, 243 Wis. 2d 648, 627 N.W.2d 484.  For example, the doctrine of respondeat superior assigns vicarious liability to an employer for the torts of its employees acting within the scope of their employment.  <u>Javier v. City of Milwaukee</u>, 670 F.3d 823, 828 (7th Cir. 2012) (interpreting Wisconsin law and citing <u>Kerl</u>, 273 Wis. 2d 106, 682 N.W.2d at 333–37; <u>Restatement (Third) of Agency</u>, § 7.07 (2006)).

"A prerequisite to vicarious liability under respondeat superior is the existence of a master/servant relationship." <u>Kerl</u>, 273 Wis. 2d 106, ¶ 18.  Although vicarious liability typically arises in the employer-employee relationship, it is not confined to this type of agency.  <u>Id.</u> at ¶ 22.  "A servant need not be under formal contract to perform work for a master, nor is it necessary for a person to be paid in order to occupy the position of servant." <u>Id.</u>  Further, "multiple factors may be considered in determining whether a master-servant relationship exists," with the right to control being the dominant test.  <u>Petzel v. Valley Orthopedics Ltd.</u>, 2009 WI App 106, ¶ 16, 320 Wis. 2d 621, 770 N.W.2d 787 (citing <u>Pamperin v. Trinity Memorial Hospital</u>, 144 Wis. 2d 188, 199, 423 N.W.2d 848, 852 (1988)).

Plaintiff has said very little about her claims against defendants Listecki, Callahan and Gorman.  In her complaint, she alleges only that defendant Moore is employed by St. Joseph's Cathedral and that Gorman was responsible for "the interests and activity" of the cathedral; Callahan "governs" the cathedral; and Listecki oversees the diocese in which St. Joseph's is located.  Plt.'s Cpt., dkt. #2, at ¶ 2-4.  However, the undisputed facts show that

defendants Callahan and Gorman did not employ, supervise or control any other aspect of the duties performed by defendant Moore.  In addition, plaintiff has not adduced any evidence showing that defendant Moore was acting within the scope of his employment when he allegedly assaulted plaintiff.  Scott v. Min-Aqua Bats Water Ski Club, Inc., 79 Wis. 2d 316, 321, 255 N.W.2d 536, 538 (1977) ("Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.").  As a result, defendants Callahan, Gorman and Listecki can not be held liable for the intentional tort allegedly committed by defendant Moore and summary judgment will be granted in their favor.  Plaintiff's remaining claim that defendant William Moore sexually assaulted her will proceed to trial.

ORDER

IT IS ORDERED that the motions for summary judgment filed by defendants William Callahan, Michael Gorman and Edward Jones, dkt. #85, and defendant Jerome Listecki, dkt. #77, are GRANTED.  Those defendants are DISMISSED.

Entered this 14th day of January, 2015.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

9